## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> *Plaintiff,* <br><br> v. <br><br> **MARK D. SMITH**, <br><br> *Defendant.* | Case No. 09-CR-237-RCL-1 |

### MEMORANDUM OPINION

Defendant Mark D. Smith seeks a reduced sentence pursuant to the First Step Act of 2018. Mot., ECF No. 185. Smith has served approximately 130 months of a 156-month sentence. Accounting for good time credit, his projected release date is January 19, 2021. Mot. Ex. B, ECF No. 185. The government argues that Smith is ineligible under § 404(a) of the First Step Act for the requested reduction. Opp'n at 1, ECF 190. And were Smith so eligible, the government further contends that the Court, in its discretion, should not reduce his sentence. *Id.*

Having considered the briefs, applicable law, and the record herein, the Court holds that Smith is ineligible for a sentence reduction under the First Step Act. Even if he were, the Court would exercise its discretion to decline the requested reduction. For those reasons, Smith's Motion is **DENIED**.

### I.    BACKGROUND

In December 2009, a grand jury issued a superseding indictment against Smith and several co-defendants. Indictment, ECF No. 39. Smith was charged with a total of five counts, including conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine ("powder cocaine") and 50 grams or more of cocaine base ("crack cocaine") in violation of 21

1

U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), and 846 ("Count 1"). *Id.* at 1–5. Because of his two prior felony drug convictions, Smith faced a then-mandatory life sentence if he were convicted on any of those five counts. Sentencing Tr. at 2, ECF No. 153.

Smith decided, wisely, to strike a deal. On August 24, 2010, he pled guilty to Count 1 and accepted a thirteen-year prison sentence. Plea Agreement, ECF No. 102. In exchange, the government dismissed the other counts against him. *Id.* Smith freely confirmed the government's proffer of evidence that predicated the plea agreement. Proffer of Evidence, ECF No. 103. Smith acknowledged that government agents had caught him selling, on four separate occasions in 2008, a total of 462 grams of crack cocaine to a confidential informant. *Id.* at 2, 4. And he also confirmed, in his signed plea agreement, that the volume of crack cocaine for which he was ultimately responsible was even greater. Plea Agreement at 2, ECF No. 102. Indeed, he conceded that during the course of the drug conspiracy he was involved in, he trafficked at least 1.5 kilograms, but fewer than 4.5 kilograms, of crack cocaine. *Id.*

Prior to sentencing, a Presentence Investigation Report (PSR) was compiled for the Court. PSR, ECF No. 131. The PSR calculated that Smith had an offense level of 31 and a criminal history category of IV, resulting in a recommendation of a 151- to 188-month sentence under the U.S. Sentencing Guidelines ("Guidelines"), and a statutory minimum sentence of ten years under § 841(b)(1)(A). *Id.* at ¶ 101. In December 2010, the Court accepted Smith's plea agreement and imposed his sentence. Sentencing Tr. at 10–11, ECF No. 153; Judgment, ECF No. 138.

From 2012 to 2017, Smith filed three motions seeking a reduced sentence under 18 U.S.C. § 3582(c)(2). Mot. (2012), ECF No. 150; Mot. (2016), ECF No. 152; Mot. (2017), ECF No. 169. In 2018, the Court consolidated the motions and held that Smith was statutorily eligible for a sentence reduction under § 3582(c)(2). *United States v. Smith*, No. 09-CR-237-01, 2018 WL

4518025, at *1 (D.D.C. Sept. 20, 2018), *aff'd*, 771 F. App'x 5 (D.C. Cir. 2019). The Court analyzed the 18 U.S.C. § 3553(a) sentencing factors in light of a 2014 amendment to the Guidelines and found a sentence reduction unwarranted. *Smith*, 2018 WL 4518025, at *5. The D.C. Circuit affirmed that conclusion. 771 F. App'x at 5.

Smith filed the motion at issue on February 20, 2020, seeking another application of the § 3553(a) sentencing factors to his case, this time pursuant to § 404 of the First Step Act. Mot., ECF No. 185. Smith asks for his sentence to be reduced to time served. *Id.* at 15. The government filed an opposition on May 6, 2020, arguing that Smith is either ineligible for a reduction or, if he is, that such a reduction is unwarranted. Opp'n, ECF No. 190. Smith filed his Reply on September 16, 2020. Reply, ECF No. 193. With the briefing complete, the Court proceeds to the merits of Smith's request.

## II.     LEGAL STANDARD

Congress enacted the Fair Sentencing Act in 2010. 124 Stat. 2372. That Act reduced the statutory penalties for crack offenses to alleviate sentencing disparities with powder offenses. *See United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). Section 2 of the Act increased the threshold drug amounts required to trigger mandatory minimum sentences for crack offenses. 124 Stat. 2372 § 2. Before the Act, possessing 50 grams of crack cocaine triggered a ten-year mandatory minimum. *Id.* The Act increased that threshold to 280 grams. *Id.* Likewise, the 5 gram-threshold that previously triggered a five-year mandatory minimum was increased to 28 grams. *Id.* Those revisions initially did not apply to defendants sentenced before August 3, 2010, the date of the Fair Sentencing Act's enactment. *United States v. Swangin*, 726 F.3d 205, 208 (D.C. Cir. 2013).

Eight years later, Congress passed the First Step Act of 2018. 132 Stat. 5194. Section 404(a) of that Act gives retroactive effect to Sections 2 and 3 of the Fair Sentencing Act. § 404(a). Thus, the First Step Act permits at least some defendants who were sentenced *before* August 3, 2010 to request sentences reduced in line with the Fair Sentencing Act's modifications. *Id.* Whether to grant such reductions remains within courts' discretion. *Id.* at § 404(c). And not all crack offenders are eligible to make such requests. Rather, they must show that they committed the sort of "covered offense" for which the First Step Act permits a reduction. *Id.* at § 404(a).

Section 404(a) defines which crack violations are "covered offense[s]." *Id.* Because of that definition's centrality to the present dispute, the Court reproduces § 404(a) below:

> (a) DEFINITION OF A COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

Smith undoubtedly sold crack cocaine and thereby offended the drug laws of this country. By his own admission, he was caught red-handed dealing 462 grams to a confidential informant. Plea Agreement, ECF No. 102; Proffer of Evidence, ECF No. 103. And he conceded responsibility to having trafficked at least 1.5 kilograms—1,500 grams—all told.[1] *Id.* But did he commit a "covered offense" that would make him eligible for a reduced sentence? Smith says yes; the government says no. The government is right. After surveying the parties' respective arguments about the meaning of § 404, the Court explains why Smith's offense is not a "covered offense," and why he is thus ineligible for a reduced sentence.

---

[1] The Court notes that this case presents no *Apprendi* issue. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). In his plea agreement, Smith not only stipulated the relevant quantities of drugs, but he also waived any right to trial by jury. Proffer of Evidence, ECF No. 103; Plea Agreement, ECF No. 102 ("In entering this plea of guilty, your client understands and agrees to waive certain rights afforded to your client by the Constitution of the United States and/or by statute, including: . . . the right to be tried by a jury.").

### III. DISCUSSION

**A. Because "Covered Offense" Refers to Real-World Conduct in Violation of a Statute Rather than a Defendant's Statute of Conviction, Smith is Ineligible for a Sentence Reduction Under § 404**

The debate about Smith's eligibility hinges on whether § 404(a)'s definition of a "covered offense" refers to real-world conduct in violation of a statute or merely the defendant's statute of conviction. Why does that distinction matter? At the time Smith violated the relevant statutes, the law imposed mandatory minimums for defendants who dealt at least 50 grams of crack cocaine. The Fair Sentencing Act modified those laws—and the First Step Act made the modifications retroactive—such that the relevant mandatory minimum now applies only to those who dealt at least 280 grams of crack cocaine. Yet Smith admitted dealing several hundred grams of crack cocaine over and above even the *new* threshold. So if he were sentenced today, he would remain subject to the mandatory minimums for crack violations. Opp'n at 1, ECF No. 190. The penalties imposed upon his real-world conduct, then, were not "modified" by either the Fair Sentencing or First Step Acts.

At the same time, it is also true that Congress later "modified" the mandatory minimums of the statutes Smith was convicted of violating. So what determines Smith's eligibility for a reduction? His real-world conduct, for which he would receive the same penalties today, or merely the fact that his statute of conviction was later changed? The government says the former. In its view, "[t]he statute . . . keys eligibility not on the defendant's statute of conviction, but on the specific 'violation' that the defendant 'committed.'" Response at 11, ECF No. 190. In other words, the government thinks that Smith's real-world conduct in violation of federal drug law determines—and precludes—his eligibility: Since Smith dealt a volume of crack greater than the

new minimum threshold, the penalties associated with his conduct were not "modified." His "violation," therefore, is not a "covered offense."

Smith replies that it must be the latter: "[i]t is . . . immaterial to the eligibility inquiry," he says, "whether the relevant conduct amount [sic] of crack cocaine was greater than 280 grams." Mot. at 9, ECF. No. 185. Instead, "[i]t is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act." *Id.* (quoting *United States v. Davis*, 423 F. Supp. 3d 13, 16 (W.D.N.Y. 2019)). So, Smith says, merely because his statute of conviction was later modified, he is entitled to seek a reduced sentence.

Who prevails? The D.C. Circuit has not yet settled this debate for our jurisdiction. Most courts to have considered the issue, though, subscribe to Smith's "statute of conviction" reading. The First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits all have endorsed his view.[2] Several have framed it as the "natural reading" of § 404(a). *See, e.g.*, *United States v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019). With respect, however, this Court disagrees. The trigger for eligibility under § 404(a) is not merely the statute under which the defendant was convicted, but the real-world conduct the defendant committed to violate the statute. If the penalties for that conduct were not "modified" by the Fair Sentencing Act, then the defendant cannot invoke the First Step Act to seek a reduction.

---

[2] *United States v. Smith*, 954 F.3d 446 (1st Cir. 2020); *United States v. Johnson*, 961 F.3d 181 (2d Cir. 2020); *United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019); *United States v. Jackson*, 945 F.3d 315 (5th Cir. 2019); *United States v. Boulding*, 960 F.3d 774 (6th Cir. 2020); *United States v. Shaw*, 957 F.3d 734 (7th Cir. 2020); *United States v. McDonald*, 944 F.3d 769 (8th Cir. 2019); *United States v. Jones*, 962 F.3d 1290 (11th Cir. 2020). So heavily outnumbered, the Court may soon find itself in a juridical Battle of the Alamo. But whom is it that everyone remembers from that storied confrontation? The Texans.

*1. The Text of § 404(a) Makes the Trigger for Eligibility the Defendant's Real-World Conduct in Violation of the Statute, Not Merely the Statute of Conviction*

The best place to start when discerning the meaning of a statutory provision is with the text itself. As aforementioned, § 404(a) provides as follows:

> (a) DEFINITION OF A COVERED OFFENSE.—In this section, the term 'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

Section 404(a), obviously, defines the term "covered offense." The key issue is whether Congress here codified a definition of "offense" that refers only to the particular statute offended, rather than the actual conduct by which the defendant offended the statute. The former reading would be odd, because the ordinary meaning of "offense" refers to real-world conduct: *Black's Law Dictionary* tells us that an "offense" is "[a] violation of the law." *Offense*, Black's Law Dictionary (9th ed. 2009). And what is a "violation"? Again, according to *Black's*, a "violation" is "the *act* of breaking or dishonoring the law." *Violation*, *id.* (emphasis added); *see also Violation*, Webster's Third New International Dictionary (1961) ("The *act* or *action* of violating [.]"). So an "offense" is separate from the law itself. An offense requires a law to break, but the *offense* of the law occurs only when the defendant commits a real-world act in violation of the law's proscription.

Not only does the ordinary meaning of "offense" refer to a "violation," and thus to actual conduct, but that is also exactly what Congress said in the statute.[3] § 404(a). The text itself

---

[3] Readers may wonder whether Congress's use of two different words—"offense" and "violation"—to describe the same phenomenon—real-world conduct that contravenes a legal proscription—means the Court should impart different meanings to "offense" and "violation." The answer is no. First, Congress explicitly defined "offense" to mean "violation" in § 404(a), thereby revealing that for purposes of the statute, the terms are tantamount. § 404(a). And as the Court explained above, their unity also accords with ordinary meaning, under which an "offense" is thought of as a "violation" of the law. Second, the presumption of "meaningful variation," as it is sometimes called, requires that there be a *material* variation in the terms selected for the shift in terms to effect a shift in meaning. William N. Eskridge, et al., *Cases and Materials on Legislation and Regulation: Statutes and the Creation of Public Policy* 678 (5th ed. 2014); Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012). Because both the statute and ordinary meaning treat "offense" and "violation" as synonymous, that canon is not triggered. The

reiterates that "[t]he term 'covered offense' means a *violation* of a Federal criminal statute […]." *Id.* Just as ordinary readers would expect, § 404(a) does not displace the usual meaning of "offense." When Congress said "offense," it really did mean a "violation"—"the *act* of breaking the law"—rather than an idiosyncratic conception of "offense" that encompasses only the law broken. "Offense" means "violation," and both refer to actual conduct.

The real utility of § 404 is its attempt to set forth what, in the universe of "offenses," constitutes a "*covered* offense." Regarding what is a "*covered* offense," we get some clues in § 404(a)'s third clause: ". . . the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act[.]" § 404(a). But the parties also hotly contest the significance of that phrase. The government says it modifies "violation." Opp'n at 11, ECF No. 190. Under that reading, Smith is ineligible, because his original violation—the real-world volume of crack cocaine he dealt—was so immense he would be subject to mandatory minimums even now. *Id.* at 13–15. Smith replies that, instead, the clause must modify "of a federal criminal statute." Reply at 2, ECF No. 193. True, he trafficked so much crack cocaine he would have received the mandatory minimum today. But since that statutory trigger for the minimum was, in fact, modified, he says he is eligible for a reduction. Opp'n at 8–9, ECF No. 185. Who's right?

Smith invokes several cases and canons in support of his view, but they do not persuade the Court. Smith's Reply, for instance, leads with the recent Fourth Circuit case *United States v. Wirsing*. Reply at 1, ECF No. 193 (citing 943 F.3d at 185–86). (And *Wirsing* appears to have inspired later Circuit decisions endorsing Smith's view. *See, e.g.*, *Shaw*, 957 F.3d at 738, 742 (citing *Wirsing* approvingly); *Jackson*, 945 F.3d at 320 (same)). In *Wirsing*, the panel reasoned

---

variation in terms is not material. And unlike its sibling, the presumption of consistent usage, the presumption of meaningful variation—when applicable—is a "weak presumption" at best, susceptible to ready displacement by other indicia of meaning. Eskridge, *supra* at 768.

8

that "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act" must modify "of a Federal criminal statute," rather than "violation," based on "the rule of the last antecedent."[4] *Wirsing*, 943 F.3d at 185–86. It understood the principle to mean that "modifiers attach to the closest noun," and it thought that presumption should be displaced only for "extraordinary reason[s]." *Id.* at 186 (citing *Lopez v. Gonzales*, 549 U.S. 47, 56 (2006)). The last-antecedent rule is a legitimate canon, to be sure. But the Fourth Circuit's application of that principle to § 404 is unpersuasive.

The *Wirsing* panel reasoned that § 404(a)'s third clause must modify "statute," instead of "violation," because "statute" is literally the nearest antecedent and because no considerations displaced the assumption that modifiers should attach to the closest antecedents. *Wirsing*, 943 F.3d at 185–86. But as the Fourth Circuit conceded, the last-antecedent rule is not an iron dictate; it is a rule of reason capable of yielding to surrounding text and context. *Id.* at 186. Indeed, the rule "is not an absolute," nor is it "inflexible and uniformly binding." Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 47.33 (7th ed. 2020). As Justice Scalia—erstwhile champion of the last-antecedent rule[5]—himself explained, the grammatical presumption it represents "can assuredly be overcome by other indicia of meaning." *Barnhart*, 540 U.S. at 26 (Scalia, J.).

---

[4] Smith's Reply erroneously claims that the applicable presumption is the nearest-reasonable-referent canon. Reply at 3, ECF No. 193. That conflation is a common mistake. Scalia & Garner, *supra* at 152. The relevant, superficially ambiguous word is "which," found in § 404(a)'s third clause. "Which" is functioning here as a pronoun. *See Pronoun*, Webster's Third New International Dictionary (1961) ("[A] word . . . that is used as a substitute for a noun or a noun equivalent[.]"). It's standing in for either "statute," according to Smith, or "violation," according to the government. Only pronouns have antecedents, and so it's the last-antecedent rule that is relevant. Scalia & Garner, *supra* at 152. The nearest-reasonable-referent canon applies when the modifier is something else, like an adjective, adverb, or adverbial or adjectival phrase. *Id.* The presumptions behind each canon are similar, though, and so the Court disposes of the substance of Smith's arguments about the nearest-reasonable-referent canon via its discussion of the last-antecedent rule.

[5] *See* Caleb Nelson, *Statutory Interpretation* 225 (2011) (noting that Justice Scalia helped revive the last-antecedent rule in a couple of opinions in the early 2000s: *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 343–44 (2005), and *Barnhart v. Thomas*, 540 U.S. 20, 26–27 (2003)).

And here—contrary to the Fourth Circuit's perception—surrounding context negates that ordinary presumption. If the last-antecedent rule were strictly applied to § 404(a), it would render the statute absurd. Consider briefly not the third clause, but the fourth: "that was committed before August 3, 2010." § 404(a). "That" here, like the third clause's "which," is also a pronoun. *See Pronoun*, Webster's Third New International Dictionary (1961) ("[A] word . . . that is used as a substitute for a noun or a noun equivalent[.]"). So what is its antecedent? Reading back through § 404(a), "statute" is the nearest candidate, and "violation" only the second-nearest. A strict and literal application of the last-antecedent rule would lead readers to believe the "*statute*" must have been "committed before August 3, 2010."  But, of course, one does not "commit" a statute. One commits a "violation." The antecedent of the fourth clause's "that" must be the second clause's "violation." Smith does not dispute that point. But if modifiers are always supposed to modify the closest antecedent, then why, exactly, is Smith so unperturbed about "that was committed" stretching all the way back to "violation"? For his view to be internally consistent, he would have to think that "the statutory penalties for which" *and* "that was committed" both modify "statute."

Conversely, the government's view does not require the internally contradictory dépeçage mandated by Smith's approach. If "statute" is (correctly) disregarded as a potential antecedent, then "violation" is what is being referred to by both "for which" in the third clause and "that" in the fourth clause. The government's view makes sense. It's the penalties "*for*" the violation that must have been modified for the violation to become a "covered offense." And it's the *violation* that must have been committed before August 3, 2010 for eligibility to arise for a reduced sentence.

Concluding that the phrase "the statutory penalties" modifies "violation," rather than "Federal criminal statute," also better accords with ordinary meaning. The justice system does not penalize *statutes*. It penalizes *violations* of those statutes. *Black's*, helpfully, provides a specific

10

definition for the term "statutory penalty": "a penalty imposed for a statutory *violation*." *Statutory Penalty*, Black's Law Dictionary (9th ed. 2009) (emphasis added). So if a violation is a real-world "act," and a statutory penalty punishes a "violation," then a statutory penalty punishes an act. Again, that makes sense. The penalty attaches to real-world conduct in violation of a legal proscription.

In the last pages of his Reply, Smith invokes other canons in a couple of brief and conclusory paragraphs: the "anti-surplusage canon" (commonly called the presumption against superfluity)[6] and the presumption against retroactivity. Reply at 3, ECF No. 193. The Court disposes of both in turn. Smith's claim about surplusage is this: If the Court were to adopt the government's interpretation, it would render both "of a Federal criminal statute" and "the adjective 'statutory' before penalties" surplusage. *Id.* Neither allegation is persuasive. Take, first, Smith's argument about the word "statutory." The term still performs some work in the government's interpretation. "Penalty," by itself, is extremely broad. It literally refers to any "punishment imposed upon a wrongdoer." *Penalty*, Black's Law Dictionary (9th ed. 2009). But *which* punishment? State administrative regulations that deny housing and adoption rights to felons? Private discrimination against felons in hiring and professional licensure? *Cf. Collateral Consequences of Criminal Convictions: Judicial Bench Book*, American Bar Association (Mar. 2018), https://www.ncjrs.gov/pdffiles1/nij/grants/251583.pdf. Not so. It's the *statutory* penalties for the violation—specifically, those statutory penalties later modified by the Fair Sentencing Act—that matter for eligibility.

Even if the Court assumed for the sake of argument that the government's interpretation *did* render the word "statutory" surplusage, Smith's interpretation still would not prevail. That is

---

[6] Nelson, *supra* at 88.

because the presumption against superfluity tells courts, when confronted with two competing interpretations of a statute, to select the interpretation that would not make statutory language superfluous. Nelson, *supra* at 88. Smith's problem? His own interpretation would engender as much superfluity as he alleges the government's does. Assume, like Smith, that "penalties" modifies "statute." If Congress really meant to tell us that it was the "penalties" "of a Federal criminal statute" that triggered eligibility, why would it feel the need to reiterate, after the intervention of merely a comma and a "the," that the relevant "penalties" were indeed "statutory"? Smith does not say.[7]

A similar problem pervades his argument about the phrase "of a Federal criminal statute." The phrase does not strike the Court as surplusage under the government's reading, because it reinforces *which* body of substantive law—federal—the violator must have offended to have committed a "covered offense." But assume the phrase were superfluous under the government's reading. Section 404(a)'s third clause, "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010," would make the phrase just as superfluous under Smith's. The only penalties directly modified by the Fair Sentencing Act were those associated with violations *of federal statutes*. So even if § 404(a)'s second clause didn't say "of a Federal criminal statute," readers could easily infer that the relevant violations for eligibility must have

---

[7] That the term "statutory penalties" may engender mild superfluity under either interpretation is further evidenced by the status of the term as a compound noun. *See Statutory Penalty*, Black's Law Dictionary (9th ed. 2009). The term apparently arose in the eighteenth century, *id.*, likely to describe the penalties imposed by England's increasingly harsh and comprehensive set of criminal statutes now known as the "Bloody Code." *Cf.* Jim Sharpe, *Crime, Order, and Historical Change*, in THE PROBLEM OF CRIME 109 (John Muncie & Eugene McLaughlin eds., 1996). Common law crimes, of course, have been abolished at the federal level, and so today it may be pleonastic to refer to "*statutory* penalties," since penalties are now imposed by statute. *See* Carissa Byrne Hessick, *The Myth of Common Law Crimes*, 105 Va. L. Rev. 965, 979 (2019). But that fact aside, in a great many contexts, compound nouns will engender superfluity anyway. Imagine a major league hitter about to step up to the plate who instructs his team's ball boy to go fetch the hitter's "baseball bat." That's a perfectly natural thing to say, but also somewhat pleonastic. The hitter could have just requested his "bat," and the request's content would have been clear given the context. Not even the most clueless of ball boys would have set out in search for the mammal.

been of those statutes, since that is what the Fair Sentencing Act modified. Because that modest superfluity exists under either parties' interpretation, though, Smith cannot invoke the presumption as a reason for his own view to prevail. Nelson, *supra* at 88.

Smith's closing salvo is aimed at the alleged retroactivity he thinks the government's interpretation would ascribe to the original Fair Sentencing Act. Reply at 3, ECF No. 193. Smith points out that § 404 refers to the penalties that "were modified" by the Act. *Id.* That, he says, shows that the third clause must apply to "Federal criminal statute," rather than "violation," because the original Fair Sentencing Act was not retroactive. *Id.* Thus, while it could modify the penalties attached to "statute[s]," it could not modify the penalties attached to real-world violations of those statues that occurred before August 3, 2010. *Id.* So, because of the First Step Act's alleged non-retroactivity with respect to pre-August 3 offenses, the third clause's antecedent must be "statute." *Id.* Yet that argument misunderstands the nature of retroactivity.

Retroactivity has two distinct facets—constitutional and statutory—only the latter of which is relevant to Smith's motion. The constitutional principle against retroactivity, embodied in the Ex Post Facto Clause, bars the government from criminalizing or increasing the penalties for real-world, pre-enactment conduct. U.S. Const. art. I, § 9, cl. 3; Nelson, *supra* at 191 (citing *Calder v. Bull*, 3 U.S. 386 (1798)). But retroactivity in that constitutional sense was no bar to the Fair Sentencing Act—a clear boon to a certain class of federal crack offenders. What Smith's referring to is retroactivity in the statutory sense. That is, even where Congress *could* pass a statute with retroactive effect, courts generally will not read Congress to have done so without a clear statutory statement that Congress so meant. Nelson, *supra* at 192–93. And Smith is correct that the Fair Sentencing Act was not originally retroactive; that is what the First Step Act sought to change.

But the idea of "retroactivity" must be measured in relation to the relevant retroactivity event. Scalia & Garner, *supra* at 263. And that is not always real-world conduct. For example, imagine at Time 1 the parties engage in a real-world transaction. At Time 2, they initiate a lawsuit over that transaction. At Time 3, Congress changes a rule of evidence that affects the parties' case. At Time 4, the court must rule on a question of evidentiary admissibility that hinges on the new rule. Would it be "retroactive" for the court, at Time 4, to apply a rule promulgated at Time 3 to adjudicate a dispute about a transaction that unfolded at Time 1? No. The relevant retroactivity event was the court's occasion to rule on the admissibility of the evidence, *not* the commission of the underlying, real-world transaction. *Id.* (discussing the aforementioned example). So even though Congress set forth its new rule *after* the parties' conduct took place, the rule came about *before* the occurrence of the relevant retroactivity event.

In the context of the Fair Sentencing Act's penalty modifications, the relevant retroactivity event was not defendants' commission of real-world drug offenses, but their sentencing for those offenses. Imagine a defendant who commits real-world conduct that amounts to a drug violation and is indicted in July 2010. Congress passes the Fair Sentencing Act in August 2010. The court sentences the defendant in September 2010. Would it be "retroactive" for the sentencing court, in September, to apply the Fair Sentencing Act to real-world conduct that transpired in July, before the Act's passage? Again, no. The relevant event was not the violation, but the sentencing. *Swangin*, 726 F.3d at 207 (citing *Dorsey v. United States*, 132 S.Ct. 2321 (2012) ("In *Dorsey*, the Supreme Court held that the Fair Sentencing Act's reduced mandatory minimums apply to defendants sentenced *after* the Fair Sentencing Act's effective date, even if they were convicted before that date."). When a case is pending within the court system, Congress is entitled to amend the applicable rules of decision, especially on a prospective basis. *Bank Markazi v. Peterson*, 136

14

S.Ct. 1310, 1317 (2016). The judiciary is then bound to apply those new rules of decision. *Id.* The scenario that Smith labels "retroactive" would be, in fact, prospective. The Act, then, indeed *did* modify penalties associated with real-world conduct that transpired before August 3, 2010, so long as sentencing had not also occurred before that date; yet another barb deflating Smith's interpretation of § 404(a).

Smith's "retroactivity" argument not only fails to persuade the Court to adopt his view of § 404(a), but it undermines his case even further. Smith himself was sentenced *after* August 3, 2010, when the Fair Sentencing Act was enacted. Sentencing Tr. at 1, ECF No. 153. If Smith had a legitimate grievance under the Act, its then-nascent and celebrated passage should have put it uppermost in his and his lawyer's minds at sentencing. *See, e.g.*, *President Obama Signs Bill Reducing Cocaine Sentencing Disparity*, ACLU (Aug. 3, 2010), https://www.aclu.org/press-releases/president-obama-signs-bill-reducing-cocaine-sentencing-disparity (labeling the Fair Sentencing Act "an historic piece of legislation" and a "landmark").  He was free to invoke it and, if the Court wrongly declined to apply its provisions to his pending sentence, preserve the issue for appeal. So what does Smith's Sentencing Memorandum have to say about the Fair Sentencing Act and the crack/powder disparity? Sentencing Mem., ECF No. 134. Nothing. Not even innuendo. Instead, it implored the Court to accept his plea and spare him from life in prison. *Id.* at 2. When Smith later went *pro se*, he argued, naturally, that his "nefarious lawyer" tricked him into accepting his plea. Mot. at 2, ECF No. 152. But obviously the disparity argument was not raised in the first instance because his case has nothing to do with the disparity the Act sought to correct, just as any lawyer—Smith's too, apparently—would have seen. His original omission is yet further proof that Smith is not seeking to vindicate the purpose of the Fair Sentencing Act, but to exploit drafting ambiguities in the subsequent First Step Act.

### 2. The Statutory Purpose of the Fair Sentencing and First Step Acts Confirms that the Government's Interpretation is Correct

As the foregoing analysis reveals, Smith has not even set forth a textually permissible interpretation of § 404(a). But had he managed to do that, and were the Court forced to pick between his view and the government's, it would not be a difficult choice. "A textually permissible interpretation that furthers rather than obstructs the [statute's] purpose should be favored." Scalia & Garner, *supra* at 63. As everyone knows, and Smith himself points out, the Fair Sentencing Act's raison d'être was alleviation of the sentencing disparity between crack and powder offenses. Mot. at 5, ECF No. 185. It used to be that crack offenders could trigger mandatory minimums for dealing an amount of crack cocaine only one-one-hundredth of what they would have had to deal to trigger the powder minimums. In response, the Act "raised the (b)(1)(A) threshold [for mandatory minimums for crack offenses] from 50 grams to 280 grams and the (b)(1)(B) threshold from 5 grams to 28 grams." *Id.*

So what does Smith's motion have to do with rectifying the old crack/powder disparity? As the Court pointed out before, nothing. Smith is not among the class of offenders caught dealing 50 to 279 grams of crack cocaine who would therefore be subject to mandatory minimums under the old statute but not the new one. Smith dealt so much crack cocaine that he would be subject to mandatory minimums whether sentenced then or now. He was not a victim of the disparity the Fair Sentencing Act sought to correct. And he therefore cannot invoke the First Step Act to have the Court reappraise his original sentence.

Nor is the Court swayed by the dangling of the dubious talisman that statutes with a "remedial purpose . . . should be [liberally] construed." *Cf. United States v. Rose*, 379 F. Supp. 3d 223, 229 (S.D.N.Y. 2019). Must, then, *non*-remedial statutes be illiberally construed? Certainly not. Interpretation should not strive to be liberal or illiberal; it should strive to be fair. Scalia &

Garner, *supra* at 364. Indeed, "liberality of exposition is clearly inadmissible if it extends beyond the just and ordinary sense of the terms." 1 Joseph Story, *Commentaries on the Constitution of the United States* § 429, at 404 (2d ed. 1858); *see also CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014) ("The Court of Appeals supported its interpretation . . . by invoking the proposition that remedial statutes should be interpreted in a liberal manner. The Court of Appeals was in error when it treated this as a substitute for a conclusion grounded in the statute's text and structure."). But even were that incantation a sound one, it would have no application to the present case. Smith's sentence was not predicated upon the crack/powder disparity. There is no problem to remediate. A contrary construction permitting the Court to ponder *other* purported defects in Smith's sentence would indulge raw "judicial lawmaking." Scalia & Garner, *supra* at 364.

With the First Step Act, Congress hardly licensed federal courts to act as roving commissions to inspect the propriety of sentences manifestly outside the Act's text and purpose. Some members of Congress may have desired that outcome. But codify it into law they did not. The Court is reminded of Blackstone's warning about the tradeoff between law and equity. Law without equity would be "hard and disagreeable." 1 William Blackstone, *Commentaries on the Laws of England* 62 (4th ed. 1770). But the clear and consistent results of such a regime would make it "much more desirable for the public good." *Id.* Equity without law, by contrast, "would make every judge a legislator," and by so doing, "introduce most infinite confusion." *Id.* The Court fears that erroneous constructions of the First Step Act have brought to life that latter result, thrusting "the decision of every question entirely in the breast of the judge." *Id.*

### B. Even if Smith Were Eligible for a Reduced Sentence, the Court Would Not Grant Him One

Smith is ineligible for a reduced sentence, as the foregoing analysis makes clear. But even were he so eligible, the Court would exercise its discretion not to grant a reduction. Section 404(c)

of the First Step Act confers substantial latitude upon district courts in these cases: "*Nothing* in this section shall be construed to require a court to reduce any sentence pursuant to this section." 132 Stat. 5194 § 404(c) (emphasis added). So even were Smith eligible for a reduction, it would "not mean he is entitled to [one]." *Jackson*, 945 F.3d at 321 (quoting *United States v. Beamus*, 943 F.3d 789, 792 (6th Cir. 2019)); *see also United States v. Anderson*, 795 F. App'x 798 (11th Cir. 2020).

The Court finds that a reduction is not warranted for two overriding reasons. First, as the Court explained above, Smith is not the type of offender contemplated by either the Fair Sentencing or First Step Acts. Both Acts sought to reduce sentencing disparities between crack and powder offenses by reforming the sentencing regimes applicable to the former. Smith faces no disparity between the mandatory minimum he was sentenced under and the one he would have faced "if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time." 132 Stat. 5194 § 404(b). Again, there is no disparity for the Court to correct. *See Anderson*, 795 F. App'x at 798–99 (upholding a district court's refusal to reduce a sentence where the defendant dealt a volume of crack above the new threshold).

Second, the Court finds a reduction unwarranted given the magnitude of Smith's original crimes. As an initial matter, the Court does not agree with Smith that it must look to the 18 U.S.C. § 3553 factors in applying § 404. *See United States v. Moore*, 963 F.3d 725, 727 (8th Cir. 2020). But were the Court to invoke § 3553, it would not benefit Smith. This Court recently conducted a thorough § 3553 analysis of Smith's sentence, *Smith*, 2018 WL 4518025, which the D.C. Circuit affirmed on appeal, 771 F. App'x 5. The Court considered the § 3553 factors and concluded that they did not support a reduced sentence. *Smith*, 2018 WL 4518025, at *1–4.[8] The Court appreciates

---

[8] The fact that Smith's sentence is slightly above the updated Guidelines was already disposed of in *Smith*, 2018 WL 4518025, at *5.

the efforts Smith has taken toward rehabilitation during his term in custody. *See, e.g.*, Mot. at 13–15, ECF No. 185. But those facts must be viewed in light of his original offense. Smith is a multi-time felon who "played an instrumental role in a multi-year conspiracy." *Smith*, 2018 WL 4518025, at *3. He was no mere bit-player; he occupied the conspiracy's "middle rungs." *Id.* In so doing, "he received large amounts of crack cocaine . . . and then redistributed it to others." *Id.* He "capitalize[d] substantially" through his role in a criminal enterprise that preyed on citizens of the District of Columbia, "to the entire population's detriment." *Id.* at *4. The Court's analysis of those facts has not changed in the months intervening between Smith's prior request for a reduced sentence and his present attempt. Despite his crimes, Smith received a favorable sentence. He avoided life in prison. *Id.* at *5. The Court will not now disturb that to which Smith agreed.

## IV. CONCLUSION

The Court finds that Smith is ineligible for a reduced sentence under § 404 of the First Step Act. Even were Smith so eligible, the Court would decline to reduce Smith's sentence. His motion is, accordingly, **DENIED**.

A separate Order consistent with this Memorandum Opinion shall issue this date.

SIGNED this 30th day of September, 2020.

Royce C. Lamberth
United States District Judge